PHILLIP A. TALBERT
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APPROXIMATELY $140,774.48 SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER 5934091793, AND<br><br>APPROXIMATELY $11,700.31 SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER 6563035143,<br><br>　　　　　　Defendants. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

　　　　The United States of America, by and through its undersigned attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

**NATURE OF ACTION**

　　　　1.　　This is a civil action *in rem* to forfeit to the United States Approximately $140,774.48 seized from Wells Fargo Bank account number 5934091793 and Approximately $11,700.31 seized from Wells Fargo Bank account number 6563035143 (hereafter "defendant funds") involved in violations of wire fraud.

///

///

2. The defendant funds were seized by the Federal Bureau of Investigation ("FBI") on or about April 17, 2023, pursuant to federal seizure warrants. The defendant funds are currently in the custody of the U.S. Marshals Service, Eastern District of California.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This district is a proper venue pursuant to 28 U.S.C. § 1355 and 28 U.S.C. § 1395(a) because the defendant funds were seized in this district.

## BACKGROUND

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or about March 2020 to provide emergency financial assistance to millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of over $351 billion in Economic Injury Disaster Loans ("EIDL") to provide financial assistance for small businesses to meet financial obligations and operating expenses that could have been met had the disaster not occurred. The EIDL program is administered by the U.S. Small Business Administration ("SBA"), which is an executive agency of the United States.

6. To obtain an EIDL, a business must submit a loan application directly through the SBA, which is signed by an authorized representative of the business. The EIDL application requires the business, through its authorized representative, to acknowledge the program rules and to make certain affirmative certifications regarding its eligibility.

7. In completing an EIDL application, the borrower acknowledges that:

> Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

8.     In the application, the small business's authorized representative must also provide, among other things, the business's: (a) gross revenues for the twelve (12) months prior to the date of the disaster (January 31, 2020); and (b) cost of goods sold for the twelve (12) months prior to the date of the disaster (January 31, 2020).  These figures are used to calculate the business's eligibility and the amount of money it may receive under the EIDL.

9.     An EIDL application is processed and funded directly though the SBA and no third-party lenders are involved.  These loans are not forgivable and must be repaid.  The SBA requires that the information provided in EIDL applications be truthful, including information about the applicant business's revenue and cost of goods sold.

10.     EIDL proceeds must be used by the business as working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time (past, present, or future).

**FACTUAL ALLEGATIONS**

11.     In 2021, the FBI received information concerning two businesses in the Greater Sacramento Area that had improperly applied for and received loans pursuant to the EIDL program.  The two unrelated companies—Boeger Winery and Convenience Acquisition Company—allegedly subverted the disaster-related focus of the EIDL program by engaging in a series of cash withdrawals from ATMs throughout California in the Summer of 2020.

12.     Wells Fargo, the banking institution for each account, identified the suspicious cash transactions and froze each account in November 2020.  The FBI later learned that an individual known to Wells Fargo as "A.B." purportedly opened a checking and savings account at Wells Fargo in June 2020, the checking account used to seek EIDL on behalf of Boeger Winery; and the savings account for Convenience Acquisition Company's EIDL request.  A.B. is directly associated with Boeger Winery's ownership but was unaware that her identity had been compromised to open the bank accounts for the purpose of facilitating EIDL fraud.

13.     The individual known to Wells Fargo as "A.B." applied online for the checking and savings accounts using the email addresses "gobank78@mail.com" and "volart@mail.com," phone number 530-391-8428, driver's license number ending in 4310, and physical address of 1133 Locust

3

Avenue, Placerville, California 95667.  "A.B." listed a mailing address of 1737 W 45th St., Los Angeles, CA 90062.

14.     In November 2020, when Wells Fargo froze the accounts based on suspicious activity, over $140,000 remained in the checking account purportedly connected to Boeger Winery and nearly $12,000 was in the savings account for Convenience Acquisition Company.  In July 2020, just after the EIDL funds were deposited in each account, the funds were quickly dissipated via $300.00 cash withdrawals at various ATM locations in California and Nevada, including the greater areas of Los Angeles, San Francisco, and Sacramento, California and Las Vegas, Nevada.

*Boeger Winery*

15.     Individuals associated with Boeger Winery purportedly applied to the SBA for $150,000 in EIDL funds in or about July 2020.  Boeger Winery submitted a standard EIDL Application, a Loan Authorization and Agreement, and a Certificate of Completion signed by an individual known as "G.B." on or about July 14, 2020.  G.B. is the majority owner of Boeger Winery.

16.     In July 2020, the SBA approved Boeger Winery's $150,000 request for EIDL relief.  On July 16, 2020, the SBA deposited approximately $149,900 into Wells Fargo Checking Account No. 5934091793 (hereinafter "Checking Account 1793"), held in the name of Boeger Winery, Inc.  The remaining $100 of the loan was applied to the EIDL processing fee.

17.     On or about February 4, 2021, two Boeger Winery representatives, G.B. and S.B., also an owner of Boeger Winery, contacted the SBA after receiving an EIDL loan statement in the mail.  G.B. and S.B. explained to the SBA that Boeger Winery had not applied for an Economic Impact Disaster Loan.

18.     The FBI interviewed S.B. and J.B on February 23, 2022.  J.B. is the son of S.B. and G.B., and the Vice President and part owner of Boeger Winery.  J.B. and S.B. reviewed copies of the EIDL applications and Certificate of Completion, and J.B. noted that G.B.'s electronic signature on those documents was inconsistent with how G.B. signed his name on legal documents.  According to S.B., G.B. signed such official documents with his full name, "F.G.B.", whereas the fraudulent EIDL application was signed as "G.B." only.  J.B. also told law enforcement that the EIDL application

contained numerous inaccuracies with respect to the business, including understated revenues and cost of goods sold.

*Convenience Acquisition Company, LLC*

19. Individuals associated with Convenience Acquisition Company, LLC purportedly applied to the SBA for $30,000 in EIDL funds in or about July 2020. Convenience Acquisition Company submitted a standard EIDL Application, a Loan Authorization and Agreement, and a Certificate of Completion signed by an individual known as "R.F." on or about July 6, 2020. In July 2020, R.F. was the owner of Convenience Acquisition Company. In late 2020, R.F. sold the company to an individual known as "R.M." R.F. died in July 2021.

20. In July 2020, the SBA approved Convenience Acquisition Company's $30,000 request for EIDL relief and deposited approximately $29,900 into Wells Fargo Savings Account 6563035143 (hereinafter "Savings Account 5143"), held in the name of Convenience Acquisition Company. The remaining $100 of the loan was applied to the EIDL processing fee.

21. On March 28, 2023, the FBI interviewed R.M., the owner of Convenience Acquisition Company. R.M. told the FBI that Convenience Acquisition Company did not apply for or receive any Economic Impact Disaster Loans. When shown the Intake Application for an EIDL loan, R.M. noted that Convenience Acquisition Company's revenue, cost of goods sold, and number of employees were grossly underestimated. R.M. was unfamiliar with the email address on the application, "robautomall@yahoo.com," and confirmed his company involves gas stations and convenience stores, not automotive repair as written on the EIDL application.

*Bank Seizures by the FBI*

22. On or about April 17, 2023, pursuant to federal seizure warrants issued in the Eastern District of California, the FBI seized each Wells Fargo bank account: (1) Checking Account 1793, and (2) Savings Account 5143. The FBI confirmed the rapid cash withdrawals in July 2020 and that none of the transactions in either account appeared to be normal business activity or otherwise legitimate.

23. On February 23, 2022, the FBI interviewed A.B. regarding the above-described activity. A.B. told the FBI that she did not apply for the Wells Fargo bank accounts, nor was she aware of their existence. A.B. did not recognize the email addresses or alternate phone number listed on the

applications and confirmed the listed driver's license number was incorrect. A.B. resided at the listed address, 1133 Locust Avenue, Placerville, California 95667, for a few years in the mid-2000s but had not lived at the address since that time.

24. The FBI obtained information for the email address "gobank78@mail.com," used to open the bank accounts at Wells Fargo. The FBI learned that an individual with the initials "S.U." was listed on the account and the IP address associated with the last successful login for the email address, dated January 23, 2021, was 107.77.231.27. According to WhatIsMyIPAddress.com, a website cataloging the physical locations of IP addresses and logins, the IP address 107.77.231.27 connects to San Jose, California.

**FIRST CLAIM FOR RELIEF**
**18 U.S.C. § 981(a)(1)(C)**

25. The above paragraphs are incorporated by reference as though fully set forth herein.

26. The United States alleges that the defendant funds were derived from proceeds traceable to an offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), which incorporates the definition of "specified unlawful activity" found in 18 U.S.C. § 1961(1) and are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C). Wire Fraud in violation of 18 U.S.C. § 1343, constitutes "specified unlawful activity" as defined in § 1961(1) and 1956(c)(7).

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that:

1. Process issue according to the procedures of this Court in cases of actions *in rem;*

2. Any person having an interest in said defendant funds be given notice to file a claim and to answer the complaint;

///
///
///
///
///

3. The Court enter a judgment of forfeiture of the defendant funds to the United States; and

4. The Court grant such other relief as may be proper.

Dated: 9/14/2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ Kevin C. Khasigian
KEVIN C. KHASIGIAN
Assistant U.S. Attorney

**VERIFICATION**

I, Tamieka McCain, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, including information supplied to me by other law enforcement officers, as a Special Agent with the Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 9-14-2023

/s/ Tamieka McCain
TAMIEKA MCCAIN
Special Agent
Federal Bureau of Investigation

(Signature retained by attorney)